IN RE HENRIKSON'S ESTATE.
OLAF HENRIKSON AND OTHERS v. SWEDISH BAPTIST MISSION SOCIETY.[1]

May 8, 1925.

No. 24,291.

**Extrinsic evidence admissible to disclose and remove latent ambiguity.**

1. Extrinsic evidence or parol testimony may be received to disclose a latent ambiguity as to the identity of a legatee or beneficiary in a will, and the same sort of evidence is admissible to remove the ambiguity disclosed. The ambiguity may arise where the will names a legatee not in existence, or where there is a misnomer of the one named.

**Parol testimony of effect of foreign law by person not learned in it.**

2. Section 8413, G. S. 1913, permits parol proof of the tenor and effect of foreign laws as facts, and a person who professes knowledge of the laws of a foreign country may testify as to their tenor and effect, although not a lawyer or learned in the law of such country.

**When bequest for religious or charitable purpose will be awarded to foreign organizations.**

3. There being no statute in the state of testator's domicile forbidding bequests to foreign religious or charitable organizations, the courts of that state will award a bequest to such foreign organization whenever it appears by proper proof that, under the law of the domi-

[1]Reported in 203 N. W. 778.

cile of such legatee, the legatee is competent to take and use the bequest for the purposes intended by the testator.

**Bequest is taken as absolute gift, though legatee directed how to use it.**
4. The bequest in the instant case is not in trust, being to a legatee organized to take and use gifts for religious and missionary purposes who takes the same as an absolute gift, though directed how to use it.

1. See Wills, 40 Cyc. pp. 1430, 1431, 1439.
2. See Statutes, 36 Cyc. p. 1254.
3. See Wills, 40 Cyc. p. 1052.
4. See Charities, 11 C. J. p. 351, § 68 (1926 Anno).

From a decree of the probate court for St. Louis county assigning the residue of the estate of Nils Henrikson, deceased, to the Swedish Baptist General Conference in Sweden, Olaf Henrikson and others appealed to the district court. The appeal was heard by Magney, J., who modified the decree by assigning the residue to the Swedish Baptist Mission Society and affirmed the decree as modified. Olaf Henrikson and others appealed. Affirmed.

*David J. Erickson,* for appellants.
*Nelson & Cedergren,* for respondents.

HOLT, J.
The appeal by the heirs of Nils Henrikson, deceased, is from the judgment in the district court modifying the final decree of the probate court assigning the residue of his estate to the Swedish Baptist Mission Society.

Nils Henrikson was domiciled in Duluth, Minnesota, when he made his will and also at the time of his death. His heirs are three brothers and a sister, all living in Sweden. His estate consisted of bank certificates and deposits in banks, amounting to something over $11,000, nearly $9,000 of which is on deposit in three banks in Sweden. After some small bequests to his relatives, the eighth bequest reads:

"All the rest and residue of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed of to

which I may be entitled at the time of my decease, I give, devise, and bequeath to the SWEDISH BAPTIST GENERAL CONFER-ENCE IN SWEDEN, otherwise known as SVENSKA BAP-TISTERNAS ALLMANNA KONFERENS i SVERIGE, to be used in the following .manner, to-wit: That the said Swedish Baptist General Conference in Sweden shall reduce all my estate to the form of money as conveniently and as economically as it can be done, and keep the funds and money so derived deposited in not less than three banks of sound financial standing in Sweden, or invested in first class and thoroughly approved securities; the interest and income from the said investments shall be applied annually to the payment of the salary and expenses of a properly licensed and competent Baptist Minister or Preacher, who shall continually reside in and do Christian and Missionary work among the people and residents of Lillskogshojden in Ostmarks Socken, Wermlands Lan, Swenden, and nearby localities in Sweden, as the said Swedish Baptist General Conference in Sweden shall direct, it being understood that the said Minister or Preacher shall reside continually in said Lillskoghojden in Ostmarks Socken, Wermlands Lan, Sweden, and nowhere else. The principal so invested or deposited shall never be used to pay the said salary or expenses of the said Minister or Preacher, but only the interest and income derived from the said principal shall be so used. Provided that if the said interest and income and subscriptions from the members of the church in such locality shall not be sufficient to pay the salary and expenses of such Minister or Preacher, the said Swedish Baptist General Con-ference in Sweden shall pay the balance thereof from year to year. If the interest and income from the said principal shall exceed the amount necessary to be expended for the salary and expenses of the said Minister or Preacher, then the said Swedish Baptist Gen-eral Conference in Sweden may devote the balance thereof to what-ever purpose it may see fit."

It is conceded the residuary legatee named lacks capacity to re-ceive the bequest, but the contention is that the organization whose name was by the district court substituted is capable and was the one intended by the testator. The important questions presented by

the appeal are: The admissibility of evidence to identify the legatee, of evidence that under the law of Sweden such legatee is authorized to receive the bequest, and finally the validity of the same.

The general rule is that parol evidence is not admissible to add to, vary or contradict the words of a written will, for the will itself is the best evidence of the testator's intention, and it is required to be in writing. But when either latent or patent ambiguity arises as to the legatee, evidence dehors the instrument is proper, as where there are two or more persons bearing the same name as the legatee specified, or where there is a misnomer, so that there is no one to claim under the precise name designated in the will. Where there is a will, the law favors a disposition of the entire estate thereunder, rather than that a part shall go as intestate. In the instant case, there is an entity answering to the exact name of the residuary legatee in the will, but incapable of taking and using the bequest for the purpose directed by the testator. When that is made to appear, is thereby an ambiguity created which authorizes the court, in order to avoid intestacy, to admit parol evidence to identify the legatee? "Latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence," Patch v. White, 117 U. S. 210, 217, 6 Sup. Ct. 617, 710, 29 L. ed. 860. In the reception of such evidence there is no doubt need of caution so that the court may not be charged with making or changing a will which the law requires to be in writing and to speak as it reads. At the same time when, as here, the will is clear that the testator bequeaths property to a legatee for a specific purpose, and it is disclosed that such legatee is misnamed, it ought not to make any substantial difference whether the name used is that of no other party or of a party not intended. The right legatee should be ascertained.

The evidence received disclosed this situation: For years the Baptist congregations in Sweden have held an annual conference in Stockholm, to which each congregation sends delegates. This annual meeting bears the exact name of the legatee in the will. It is not a legal entity, although, by vote or resolution passed at such meetings, it seems to direct the activities of the Swedish Baptist Mission Society, which is a religious organization duly recognized

by the law of Sweden as a legal body with full power to receive by gift or otherwise personal property. The latter is a coalition of the regular Baptist congregations in Sweden into a legal body and is charged with the power to supervise and conduct missionary activities of such congregations or churches in that country and to hire missionaries, ministers and preachers. The Swedish Baptist General Conference is not a corporation or an association recognized in law as of legal responsibility. It has no power to take or hold property in its own name, and cannot employ ministers, preachers or missionaries. While there is a close and intimate connection between the conference and the society, the latter alone functions as a legal entity or responsible body in respect to all matters pertaining to the active conduct of the common work of the Baptist congregations in the Kingdom of Sweden. In one sense the conference and the Society may be said to be the same thing, or represent the same constituency, but when it comes to business or financial transactions, or legal capacity to carry out and further the common purpose of the Baptist churches of Sweden the society is the only body having existence and power.

We are of the opinion that the situation disclosed presented an uncertainty as to the identity of the legatee which permitted the admission of parol testimony. The principle stated in Patch v. White, supra, quoted with approval in Wheaton v. Pope, 91 Minn. 299, 97 N. W. 1046, seems applicable here, where a latent ambiguity removable by extrinsic evidence is stated as arising "when the will contains a misdescription of the object or subject, as where there is no such person or thing in existence, or, if in existence, the person is not the one intended," etc. In this case both testator and scrivener attempted to get the correct name of the organization capable of taking and effectuating the bequest but were misinformed, and the misnomer resulted.

The trend of the following authorities supports the admissibility of extrinsic evidence to identify the legatee: Gilmer v. Stone, 120 U. S. 586, 7 Sup. Ct. 689, 30 L. ed. 734; Hitchcock v. Board of Home Missions, 259 Ill. 288, 102 N. E. 741, Ann. Cas. 1915B, 1; Preachers' Aid Society v. Rich, 45 Me. 552; Hinckley v. Fletcher, 139 Mass.

477, 1 N. E. 840, 52 Am. Rep. 719; Stratton v. Physio-Medical College, 149 Mass. 505, 21 N. E. 874, 5 L. R. A. 33, 14 Am. St. 442; Faulkner v. Nat. Sailors' Home, 155 Mass. 458, 29 N. E. 645; Cook v. Universalist Gen. Convention, 138 Mich. 157, 101 N. W. 217; Smith v. Kimball, 62 N. H. 606; German Pioneer Verein v. Meyer, 70 N. J. Eq. 192, 16 Atl. 835; McLeod v. Jones, 159 N. C. 74, 74 S. E. 733; Amberson's Estate, 204 Pa. St. 397, 54 Atl. 484; Ross' Exr. v. Kiger, 42 W. Va. 402, 26 S. E. 193; Siegley v. Simpson, 73 Wash. 69, 131 Pac. 479, 47 L. R. A. (N. S.) 514, 1915B, 63; In re Paulson's Will, 127 Wis. 612, 107 N. W. 484, 5 L. R. A. (N. S.) 804, 7 Ann. Cas. 652. Many other decisions bearing upon the question are referred to in the note to Hitchcock v. Board of Home Missions in Ann. Cas. 1915B, 1, and in the note to Siegley v. Simpson in 47 L. R. A. (N. S.) 514. In Cook v. Universalist Gen. Convention, supra, the court said: "Extrinsic evidence is always necessary to identify the devisee, and beneficent bequests are not to be defeated by mere misnomers." The conference concedes the residuary legatee to be the society, so this is not a case of two contending for the right to be the legatee intended.

We come to the question of the errors assigned upon the reception of the evidence to identify the legatee, or prove the misnomer. It is claimed the declared intention of the testator is not to be received to vary the name so clearly written in the will. Dunham v. Averill, 45 Conn. 61, 29 Am. Rep. 642, is cited. But there two corporations capable of taking the bequest laid claim to it. One bore the precise name of the legatee in the will and it was held inadmissible to prove that the testator intended the other. Not so here, the legatee named was incapable of taking, and does not claim the bequest, but concedes it is to go to the one which really is its legal representative, and the one the testator meant to be the legatee. But laying out of the case all evidence of testator's declaration of intentions, the actual circumstances surrounding the execution of the will and the efforts made to secure the correct name of the beneficiary capable of taking were clearly admissible, and amply justify the district court in finding the society and not the con-

ference the proper residuary legatee. Appellant cites section 186, Thompson, Wills, stating: "A corporation bearing the same name as an unincorporated society cannot take a gift intended for the latter, although organized to hold property for it. The logic of this statement is that evidence to ascertain the legatee intended is admissible and controls. Hinkley v. Thatcher, 139 Mass. 477, 1 N. E. 840, 52 Am. Rep. 719; Fifield v. Van Wyck, 94 Va. 577, 27 S. E. 446, 64 Am. St. 745. In the last named case the bequest to trustees was held too vague, and the evidence did not show the corporation claiming to be the beneficiary was the one intended.

Another important series of objections to testimony received relate to the proof that the Swedish Baptist Mission Society was a legal entity under the law of Sweden and capable of receiving bequests, and that the Swedish Baptist General Conference was not an organization of any legal standing and incapable of taking or carrying out the purpose of the bequest; and that the latter as far as active missionary work was concerned of necessity was confined to what was done through and by the former.

Section 8413, G. S. 1913, reads: "The existence and the tenor or effect of all foreign laws may be proved as facts by parol evidence; but if it appears that the law in question is contained in a written statute or code, the court may, in its discretion, reject any evidence of such law which is not accompanied by a copy thereof." The deposition of Dr. Bystrom showed that he had been a member of the Swedish parliament, had been editor of the organ for the Swedish Baptists since 1889, and a member and chairman of the Swedish Baptist Mission Society for ten years, and was thoroughly acquainted with the legal status of the society and its relation to the conference. He testified that an incorporation of the Swedish Baptist Mission Society was not needed under Swedish law, but that it had legal authority to hold property and take the bequest, and carry out the desires of testator. It does not appear that there is any written code in Sweden covering the subject of religious or missionary organizations. Under the statute quoted we do not think it was necessary that the witness should be learned in the law, or a practising attorney, in order to testify as to the law of

Sweden. A statute providing that "the unwritten or common law of * * * a foreign country may be proved as a fact by oral evidence" was in State v. Behrman, 114 N. C. 797, 19 S. E. 220, 25 L. R. A. 449, held to authorize the reception of the testimony of one professing to know what such law was, even though not a lawyer. See also Pickard v. Bailey, 26 N. H. 152; American Life Ins. & Trust Co. v. Rosenagle, 77 Pa. St. 507. Even if some conclusions of the witness were embodied in the answers in the deposition no harm was done, for irrespective of conclusions, the evidence amply sustains the finding upon the proposition that the conference had no legal capacity to take bequests, and that the society was a legal entity capable of taking and using the bequest under the laws of Sweden. It is true the finding is not strictly correct that it was what we call a corporation, however, it occupies under the Swedish law the place religious corporations have under our law.

This state, having no statute prohibiting bequests of this nature to one domiciled elsewhere, a legatee qualified to take under the law of his country or state will be awarded the bequest by the courts of testator's domicile. Chamberlain v. Chamberlain, 43 N. Y. 424, holds as stated in the fourth paragraph of its syllabus "When by the *lex domicilii* a will has all the formal requisites to pass title to personalty, the validity of particular bequests will depend upon the law of the domicil of the legatee, except in cases where the law of the domicil of the testator in terms forbids bequests for any particular purpose, or in any particular manner, in which latter case the bequest would be void everywhere." It was also held that the courts of the testator's domicile will not administer a foreign charity, but will direct money bequeathed thereto to be paid to the proper parties, leaving the courts of the foreign state to provide for the due administration thereof.

Chamberlain v. Chamberlain was approved in Matter of Huss, 126 N. Y. 537, 27 N. E. 784, 12 L. R. A. 620, but limited in Cross v. U. S. T. Co. 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. 597. However, the same judge who wrote the opinion in the Cross case also spoke for the court in Hope v. Brewer, 136 N. Y. 126, 137, 32 N. E. 558, 18 L. R. A. 458, stating: "It is not a matter

of any public concern whatever to this state whether the personal property of a person domiciled here shall pass to his heirs or next of kin in a foreign country or to trustees in trust for charity residing there, or even to a foreign corporation for purposes of charity. * * * When a citizen of this state, or a person domiciled here, makes a gift of personal estate to foreign trustees for the purpose of a foreign charity, our courts will not interpose our local laws with respect to trusts and accumulations to arrest the disposition made by the owner of his property, but will inquire as to two things: First, whether all the forms and requisites necessary to constitute a valid testamentary instrument, under our law, have been complied with; and second, whether the foreign trustees are competent to take the gift, for the purposes expressed, and to administer the trust under the law of the country where the gift was to take effect." And although there were no defined beneficiaries either named in the will or capable of being ascertained within the rules of law applicable to such cases, in order to constitute a valid testamentary trust under the laws of New York, the domicile of the testator, nevertheless the bequest to a charity in Scotland was sustained, the decision ending thus:

"Our conclusion is that, even if it be assumed that the bequest of the residuary estate to the Scotch trustees in trust for the purpose of founding and maintaining the hospital, should be held void under our law for the reason that the absolute ownership of personal property is unlawfully suspended or that the beneficiaries of the trust are not sufficiently specified or defined, still that does not render the disposition invalid as these objections do not apply to a gift in trust to be administered in Scotland and perfectly valid there. This result, I think, is in harmony with the general tendency of courts to sustain testamentary dispositions of property when it fairly can be done under the rules of law and in accordance with principles of enlightened Justice."

The bequest being to an entity having capacity to take and administer the same under the laws of Sweden where it was intended to go, it is perhaps not necessary to determine whether under our laws a void or illegal trust was attempted. But the bequest being

for missionary or charitable purposes to an organization created to carry out such purposes, it may be upheld under our statutes as a bequest absolute to the organization as a gift upon condition.

In Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948, it was said: "If the bequests in this case had been made to a corporation organized for the purpose for which the gifts were made,—the education of young men for the priesthood, * * * the corporation would take the bequests absolutely, as the beneficiary, and not in trust." To the same effect is Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104. And under Young Men's Christian Assn. v. Horn, 120 Minn. 404, 139 N. W. 805, the bequest even if held to be in trust would be valid. In that case it is also said, "that it is the settled law of this state that a gift to a private individual, in trust for either personal or charitable purposes, must designate the beneficiaries at least in such a way that they are capable of being rendered certain, but that a gift to a corporation, with directions as to use, may be valid, not as a trust, but as a gift upon condition, though the ultimate beneficiaries of the gift are more or less uncertain." See also Cone v. Wold, 85 Minn. 302, 88 N. W. 977.

In Bird v. Merklee, 144 N. Y. 544, 550, 39 N. E. 645, 27 L. R. A. 423, the court said: "The fundamental error in this case, in the court below, and in cases that are frequently coming to the attention of this court, is the failure to recognize the fact that gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest, or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense, do not offend against the statutes of perpetuities, are not to be judged by any of the well-known rules pertaining to the law of trusts as applied to private individuals."

It is not necessary to refer to our cases of Bemis v. Northwestern Trust Co. 117 Minn. 409, 135 N. W. 1124, and Bogart v. Taylor, 144 Minn. 454, 175 N. W. 913, for they were ruled by Shanahan v. Kelley, supra, the bequest not being to a religious or charitable association but to individuals in trust.

Appellants contend that respondent did not appear in probate court and did not appeal from the decree there rendered, and hence had no standing in the district court. The trial in the district court was de novo. The case reached that court upon appellants' appeal and the court, in disposing of the same, had the power, and it was its duty, to give such a judgment as the proof then presented required.

Exceptions are taken to certain other findings and rulings than those hereinbefore considered, but, we think the propositions above discussed determine the case in favor of respondent, regardless of technical errors in such findings or rulings.

The judgment is affirmed.

STONE, J. (dissenting.)

I dissent. The testator went into considerable detail with what, obviously, he intended to be mandates concerning the methods of administering and the purposes of the gift. He went so far as to require that "the minister or preacher" to be maintained be a "resident continually in a given town." Moreover, he prohibited, so far as language can prohibit, the use of the principal "to pay the said salary or expenses" and directed that "only interest and income should be so used." Then, by proviso, he insisted that, if "interest and income" were not sufficient to meet his requirements, the donee or trustee should "pay the balance from year to year." It is for us to say what that language means, whatever the effect may be on the legacy. And by saying that such plain *conditions* are mere *directions* as to use, binding only on the conscience of the donee, it seems to me that we are making absolute a gift plainly intended by the donor to be conditional and in trust.

WILSON, C. J. (dissenting.)

I concur in the dissent.